UNITED STATES DISTRICT COURT
DISTRICT OF THE VIRGIN ISLANDS
ST. CROIX DIVISION

| | |
|---|---|
| **CASSANDRA PAUL,** ) | |
| ) | |
| **Plaintiff,** ) | |
| v. ) | **Civil Action No.:** |
| ) | **2007/0051** |
| **HOVENSA L.L.C.** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**DEFENDANT HOVENSA LLC'S MOTION *IN LIMINE* TO EXCLUDE
THE TESTIMONY AND REVISED EXPERT REPORT OF CAREN B. GOLDBERG**

Pursuant to Federal Rules of Evidence 402, 403, and 702, Defendant, HOVENSA, LLC ("HOVENSA"), by and through its undersigned counsel, moves to strike the Revised Expert Report and exclude the testimony of Caren B. Goldberg ("Goldberg"), who Plaintiff, CASANDRA PAUL ("Plaintiff"), designated as a "human resources ("HR") expert."

## I. EVOLUTION OF GOLDBERG'S "EXPERT" REPORTS.

Plaintiff is a former employee of HOVENSA. Plaintiff alleges HOVENSA discriminated against her on the basis of her sex, disability, and race in violation of Title VII of the Civil Rights Act, the V.I. Civil Rights Act, and the Americans with Disabilities Act. Plaintiff initially designated Goldberg as an expert to opine on whether Plaintiff was subjected to discriminatory treatment on the basis of her disability, sex and race.

### i. GOLDBERG'S INITIAL AND SUPPLEMENTAL REPORTS.

In support of Goldberg's testimony, Plaintiff submitted an Expert Report and a Supplemental Expert Report prepared by Goldberg. *See* Exhibit A. Goldberg's Initial Expert Report "centers on the decision to decline [Plaintiff's] vacation request, the decision to deny her the opportunity to "act up" when Mr. Amalu was on vacation, the decision to deny her the

1

opportunity to attend training on the Honeywell computer system, the decision to not promote her to the Documents Supervisor position, the decision to refuse her an interview for the Superintendent position, the decision to not provide her reasonable accommodations, and the decision to deny her the opportunity to return to work, after obtaining a medical clearance to do so." *See* Exhibit A, Expert Report p. 5.  In her initial Expert Report, Goldberg opines that HOVENSA's employment decisions pertaining to Plaintiff lack any business justification, run counter to the practice of and research on effective HR management, and demonstrate that the climate at HOVENSA is "conducive to discrimination." *Id.* at p. 3, 26.

In Goldberg's Supplemental Expert Report, she considers additional documents in this matter regarding Plaintiff returning to work after a fainting incident and concludes that HOVENSA's decision to not immediately return Plaintiff to work evidences "HOVENSA's lack of regard for providing equal opportunity."  *See* Exhibit A, Supplemental Expert Report.

   **ii.** **COURTS HAVE RECENTLY EXCLUDED AND/OR LIMITED GOLDBERG'S EXPERT TESTIMONY.**

After Goldberg issued her Initial and Supplemental Reports, the District of Kansas, in *Apsley v. Boeing Co.*, declined to consider an expert report authored by Goldberg in an employment discrimination case in support of plaintiff's contention that the defendants had an age-biased culture and that this culture affected the hiring process. *Apsley v. Boeing Co.*, 722 F. Supp. 2d 1218 (D. Kan. 2010); motion for reconsideration denied, *Apsley v. Boeing Co.*, 2011 U.S. Dist. LEXIS 32768 (D. Kan. March 28, 2011).  The court in *Apsley* stated:

> [i]n her report, Dr. Goldberg states that the statistical disparities identified by Dr. Mann occurred in a climate of age-based animus and were the result of an intentional plan to reduce the age of the workforce.  She also states that the subjectivity of the selective rehiring process provided fertile ground for bias, that the process was incapable of yielding accurate results, and the negative

>decisions regarding older workers is more likely in an age bias climate.

*Id.*  The court in *Apsley* found that Goldberg's opinions were **not** the proper subject of expert testimony and declined to consider them.  *Id.* at n. 62.  The court explained that "[t]he essence of Dr. Goldberg's expert report is simply that, in her opinion, there was a better way to make the hiring decisions and the fact that Defendants did not use her preferred method indicates animus." *Id.* The court would not give "credence to [Goldberg's] opinions regarding the motivation of Defendants' actions, as they are lay matters which a jury is capable of understanding and deciding without the expert's help."  *Id.*

On January 17, 2012, HOVENSA asked Plaintiff to voluntarily withdraw Goldberg's report in light of *Apsley* and other federal court decisions which have excluded testimony by HR professionals regarding discrimination in employment decisions on grounds it is an area not requiring expert testimony and improperly usurps the function of the jury. *See e.g. Dubiel v. Columbia Hosp. (Palm Beaches) Ltd. Partnership,* 2005 U.S. Dist. LEXIS 45874 (S.D. Fla. Jan. 11, 2005).

In response to HOVENSA's request, Plaintiff's counsel advised that Goldberg had recently participated in two Daubert hearings before Judge Donetta W. Ambrose from the Western District of Pennsylvania.  In *Desir v. HOVENSA* (Case No. 07-97), and *Prentice & Francis v. Office Max* (Case No. 09-05), Judge Ambrose ruled that Goldberg may only testify as to "industry standards regarding human resources practices pertinent to this case and whether Defendant's actual practices or conduct deviated from those standards." [1]  Exhibit B, *Desir* Opinion p. 2, ln. 14-17; Exhibit C, *Prentice* Opinion p. 26, ln. 18-21.  Judge Ambrose held that

---

[1] Defendant did not agree that Goldberg should be permitted to testify to even the limited topics allowed by Judge Ambrose and continued to contend that a "human resource expert" in the context of a discrimination claim is NEVER admissible.

3

Goldberg could not testify as to (1) whether the company engaged in a pattern or practice of discrimination; (2) "any inferences or conclusions to be drawn from Defendant's deviations or HR practices"; (3) "credibility judgments of any other witnesses' testimony"; and (4) "the validity of Defendant's business or economic judgment and practices."  Exhibit B, *Desir* Opinion p. 3, ln. 5-15; Exhibit C, *Prentice* Opinion p. 25, ln. 17-25, p. 26, ln. 1.  Judge Ambrose explained that:

> The excluded evidence, specifically the credibility assessments and conclusory opinions, do not assist the trier of fact to understand the evidence or to determine a fact in issue.
>
> They also improperly invade the province of the judge, they fall outside Dr. Goldberg's area of expertise in human resources, and are not relevant to the issues in this case.
>
> Moreover, the probative value of many of these aspects of the reports is outweighed by the danger of unfair prejudice, confusion of the issue, or misleading the jury.

Exhibit B, *Desir* Opinion p. 3, ln. 24, p. 4, ln. 1-9.

### iii.  GOLDBERG'S REVISED EXPERT REPORT.

In February 2012, Goldberg authored a Revised Expert Report purportedly in line with Judge Ambrose's rulings in *Desir* and *Prentice*.  Revised Expert Report.  Goldberg's Revised Expert Report, however, is nearly identical to her Initial Expert Report.  Goldberg testified that her Revised Report differed little from her Initial Report and said: "I think substantively there's very little that differs.  I think a lot of it is semantic.  The supplemental report that I had last time, that information is not included in the current revised report.  Aside from that, the differences are largely semantic…Nothing in my - the substance of my opinion has not changed."  (Vol. I 7:16-8:6).[2]  When asked what the purpose was in revising the report, Goldberg stated: "To work through some flaws in the wording."  (Vol. I 8:7-9).

---

[2] The portions of Goldberg's deposition transcrips cited herein are attached as Exhibit D.

4

In her Revised Report, Goldberg takes issue with HOVENSA's decision to deny Plaintiff's vacation request and grant another employee's request for the same time period because the manager used a different standard to determine whose request would be granted rather than taking into consideration Plaintiff's seniority.  *See* Exhibit E, Revised Expert Report p. 6.  Goldberg concludes that "[c]hanging the rules in the middle of the game is problematic in the context of just about any HR decision" and the manager's approach adversely affected disabled employees.  *Id.*

As to Plaintiff's application for a supervisor position, Goldberg takes issue with HOVENSA'S interview packet because she believes the predetermined set of questions in the packet are not job-specific and HOVENSA's system of assigning numerical ratings to applicants during the interview process is "meaningless."  *Id.* at 11-13.  Goldberg opines that, Plaintiff should have received higher ratings by the interviewers in certain categories based on her belief that Plaintiff was more qualified for the position.  *Id.* at 13-14.  As to HOVENSA's decision to send another employee to software training rather than Plaintiff, Goldberg opines that Plaintiff "would have been the logical choice from an HR planning perspective."  *Id.* at 8.

In Goldberg's opinion, HOVENSA unlawfully failed to provide Plaintiff with a reasonable accommodation for her disability because HOVENSA took too long in granting Plaintiff's accommodation requests.  *Id.* at 17-18.  Goldberg further concludes that HOVENSA impermissibly failed to promptly return Plaintiff to her position after she fainted at work (which could have resulted in a major catastrophe if a tank overfilled) because the job description provided to the evaluating doctor was "unduly lengthy, detailed, and restrictive."  *Id.* at 19-21.

Goldberg also includes several other instances in her report which she contends shows HOVENSA's "work environment was not supportive of equal opportunity.  *Id.* at 21-24.

5

Overall, Goldberg concludes that "based on [her] reading of the deposition transcripts, related documents, and expertise in the field of Human Resource Management, it is [her] opinion that HOVENSA's policies and practices concerning employee selection, as applied to [Plaintiff's] employment, were contrary to established good HR practice and that the climate at HOVENSA is conductive to discrimination." *Id.* at 25.

## II. GOLDBERG SHOULD BE EXCLUDED AS AN EXPERT WITNESS UNDER FRE 702.

Whether a witness is properly designated as an expert witness is governed by Rule 702 of the F.R.E. Rule 702 has three major requirements: (1) the proffered witness must be an expert, *i.e.*, must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge; and (3) the expert's testimony must assist the trier of fact. *Pineda v. Ford Motor Co.,* 520 F.3d 237, 244 (3d Cir. 2008). In addition to Rule 702, the admissibility of expert testimony is governed by the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993). *Daubert* applies to all expert testimony including non-scientific expert testimony and requires the district court to perform the role of gatekeeper and to "ensure the reliability and relevancy of expert testimony." *Kumho Tire Co., Ltd. V. Carmichael,* 526 U.S. 137, 152 (1999).

Under this standard, Goldberg's proposed testimony does not pass muster, and, thus, she should be precluded from testifying as a so-called HR expert. Goldberg is not qualified to render opinion testimony regarding refinery operations as she is unfamiliar with the operations of a refinery and lacks appropriate HR experience. Goldberg's testimony is not reliable or based upon a sound methodology. Goldberg's opinions regarding discriminatory treatment are improper expert testimony. Moreover, expert testimony by an HR professional regarding whether a defendant met or violated HR industry standards is irrelevant and does not concern

6

matters on which the jury needs expert testimony. Goldberg's proposed testimony is also impermissible legal conclusions. Goldberg serves as both the judge and jury and concludes, without any scientific method, that Plaintiff was subject to discriminatory conduct, the exact issue that the jury must decide. Furthermore, Goldberg's proposed opinions fail to comply with previous court rulings limiting and/or excluding her testimony in discrimination cases. Finally, even assuming Goldberg was qualified and met the standards under Rule 702, any probative value of her testimony would be significantly outweighed by the prejudice to HOVENSA of a so-called HR expert testifying about the very employment decisions at issue.

### i.   **GOLDBERG IS NOT QUALIFIED.**

Goldberg is not qualified to render expert testimony in this case. This case concerns whether HOVENSA's decisions as to Plaintiff's employment *at the refinery* were discriminatory. In particular, this case concerns whether HOVENSA's decision to seek information from Plaintiff's treating physician as to whether Plaintiff could safely perform her job, in light of fainting at work and almost causing a major catastrophic event if the oil tank Plaintiff was monitoring overflowed, was discriminatory. The jury must also decide whether HOVENSA reasonably accommodated Plaintiff given the type of request made and the particular functions and operations of the refinery. Additionally, the jury must decide whether HOVENSA impermissibly failed to promote and/or interview Plaintiff for promotional positions which are unique and specific to the oil refinery industry. Rendering an opinion on these issues requires intimate knowledge of and experience in the refinery industry.

Goldberg has no experience working in the refining or petroleum industry or in a petrochemical facility. (Vol I 34:7-9, 34:10-12, 34:13-15). Goldberg has never worked as a HR generalist, HR manager or a vice president of HR for a corporation. (Vol. I 34:3-6, 33:24-34:2)).

7

Goldberg's HR "experience" is academic-based. Goldberg is a professor at American University. (Vol. I 13:21-23). Her HR "experience" stems from her teachings of HR classes on theory. (Vol. I 16:14-16; 17:1-14). Goldberg's only non-academic HR experience is limited to a ten month period over 13 years ago when Goldberg worked as a compensation consultant along with hiring two to three people at her mother's jewelry store in the 1980s and training employees when she was a waitress. (Vol. I 25:8-29:18; 32:18-23).

Goldberg repeatedly opines on whether HOVENSA's actions were "proper" or "improper" without have any knowledge of the underlying facts or information needed to derive such opinions. For example, Goldberg opines that HOVENSA improperly selected a less senior employee for the position of Documents Supervisor over Plaintiff and selected a non-disabled male with less supervisory experience for an interview for the Superintendent position over Plaintiff, in part, because it utilized criteria in its decision-making process that is not included in the job description for the positions. Revised Expert Report p. 8-17. Goldberg, however, has no experience in drafting job descriptions in the refinery industry. (Vol. II 137:8-13). Goldberg does not know if the person selected for the Documents Supervisor position held the same position as Plaintiff or trained other employees. (Vol. II 80:5-21). Goldberg acknowledges that she is not in a position to evaluate the quality of someone's supervisory experience, which is the exact criteria Goldberg took issue with in rendering her opinion. (Vol. II 106:21-107:2).

Goldberg takes issue with HOVENSA's decision to have Plaintiff's treating physician review the "key work practices" of the OMC position to ensure Plaintiff's fainting incident did not pose a risk of harm in the future given the hazardous nature of her position. *See* Revised Expert Report p. 19-20. Goldberg opines that the "key work practices" Plaintiff's physician was to review was unduly lengthy, detailed, and restrictive. *Id.* at 19. Goldberg is not

8

qualified to opine on HOVENSA's actions on this issue as Goldberg is wholly unfamiliar with the position Plaintiff held or the facts that led to Plaintiff's incapacity at work.  Goldberg testified that she does not know if Plaintiff was working in a safety-sensitive position.  (Vol. II 123:13-16).  Goldberg testified that she would need to refer to HOVENSA's job description for Plaintiff's position in order to testify as to the most important qualities of the position. (Vol. II 45:6-47:1).

Goldberg is also not qualified to opine on HOVENSA's decision to seek medical clearance from Plaintiff's treating physician before returning Plaintiff to work to ensure she did not pose a direct threat of harm to herself or others as Goldberg does not know the circumstances surrounding Plaintiff's fainting incident.  (Vol. II 132:2-133:8).  Goldberg does not know where Plaintiff was when she passed out, if alarms were going off, how close the oil tank was to topping, what happens if the tank does top, how Plaintiff became conscious after fainting or how Plaintiff was found when she was incapacitated.  (Vol. II 132:22-133:19).  Goldberg also does not know what can happen if a tank of petroleum product overflows into the environment. (Vol. II 134:2-5).  Goldberg does not know what is involved in a direct threat analysis.  (Vol. II 126:13-14).  Goldberg has never provided advice to an employer with respect to a direct threat analysis under the ADA.  (Vol. II 120:22-121:3).  Goldberg's only knowledge of the direct threat analysis is based on what she has read on the EEOC website.  (Vol. II 121:4-17).

Goldberg further opines on this same issue that "[t]o make matters worse, because HOVENSA designated her as being on unpaid leave, [Plaintiff] was deemed ineligible to received unemployment benefits."  (Vol. II 130:5-11).  Again, Goldberg is not qualified to opine on this topic.  Goldberg has no knowledge of why HOVENSA placed Plaintiff on unpaid leave. (Vol. II 130:10-18).  Goldberg does not know whether Plaintiff was ultimately paid for all of her

leave. (Vol. II 130:20-22). Goldberg also does not recall what period of time Plaintiff was on unpaid leave. (Vol. II 131:1-4). Goldberg does not know under what circumstances Plaintiff's insurance benefits were canceled. (Vol. II 131:17-19).

Goldberg also opines that "HOVENSA failed to provide timely reasonable accommodations for Ms. Paul's disability." Revised Expert Report p. 17-18. Goldberg opines that "there was not a lot of interest in providing" Plaintiff with the reasonable accommodation of the automatic door for the bathroom because it took a long period of time to have it installed. (Vol. II 115:18-116:6). Goldberg testified that she does not know if Plaintiff was present and working for the two years it took to have the door installed. (Vol. II 116:7-12). Goldberg opines that Plaintiff's "simple request for access to the administration building was met with such resistance and delay from Mr. Low that she ultimately ended up having to write to the CEO of HOVENSA to accommodate her request." (Vol. II 116:13-20). When asked whether she knew the factors HOVENSA considered when granting access to certain buildings or if she was assuming it was a very simple request, Goldberg responded "I can't imagine it being anything but simple." (Vol. II 117:3-8).

Goldberg opines that Plaintiff "was denied the opportunity to attend the Honeywell software training, which was afforded to the less senior Mr. Allahar." (Vol. II 68:16-20). However, Goldberg does not "know anything about the training really," what factors HOVENSA considered nor the similarities among Honeywell products. (Vol. II 70:18-71:3; 73:7-11).

It is unclear how Goldberg can opine on any of these topics when she clearly lacks the requisite knowledge and information necessary to form an opinion on these issues. Goldberg has no working knowledge of a refinery, is completely unfamiliar with the position

10

Plaintiff held, lacks knowledge of pertinent facts and information and has no expertise regarding the ADA besides what she has read on the EEOC's website. Goldberg simply disagrees with HOVENSA's decisions because, in her opinion, HOVENSA should have made different decisions which would have positively impacted Plaintiff. Goldberg lacks the requisite knowledge to form an opinion on pertinent issues and as such, her testimony should be excluded.

        **ii.**        **GOLDBERG'S TESTIMONY IS NOT RELIABLE OR BASED ON SUFFICIENT FACTS OR DATA.**

Goldberg's proposed testimony is neither reliable nor based on sufficient facts or data. Pursuant to Rule 702 of the F.R.E., expert opinion testimony is permitted only where: (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. Fed. R. Evid. 702. "[E]xperts' work is admissible only to the extent it is reasoned, uses the methods of the discipline, and is founded on data. Talking off the cuff-- deploying neither data nor analysis--is not an acceptable methodology." *Lang v. Kohl's Food Stores, Inc.*, 217 F.3d 919, 924 (7th Cir. 2000).

Here, Goldberg testified as follows regarding her methodology used in deriving her opinions in this case:

> I used a case study method whereby I took an iterative approach from the deposition transcripts and exhibits and other material that I was provided by the counsel who retained me, and then I looked at some of the scholarly and practitioner literature. And I can't say I did it sequentially; it just kind of went back and forth in an iterative manner before writing my opinion.

(Vol. I 69:11-24). Goldberg relied on introductory HR school books and information found on the EEOC's website to form her opinions. (Vol. I 35:22-36:4, 37:4-38:2, 70:11-25, 73:15-18; Goldberg Vol. II 25:14-36:7); Revised Expert Report p. 9-10, 12-13, 18, 20-21. She did nothing to independently collect all facts that could potentially be relevant to her analysis. (Vol. I 83:19-

84:8). Goldberg did not speak with Plaintiff or any HOVENSA employees or managers in rendering her opinions. (Vol. I 83:19-25, 84:10-11; Vol. II 56:17-20). Goldberg repeatedly relies upon only Plaintiff's testimony in forming her conclusions. (Vol. II 140:12-141:20).

Goldberg's case study method is not sound methodology as "forming an expert opinion by reliance on the discovery materials does not constitute a sound methodology." *Willis v. Besam Automated Entrance Systems, Inc.,* 2005 U.S. Dist. LEXIS 26466, *16 (E.D. Pa. Nov. 3, 2005). In *Rowe Entertainment, Inc. v. William Morris Agency, Inc.,* the court held that the method of testing a professor's proffered "expert" opinion, which was based on a review of litigation materials and scholarly research on discrimination, was unsatisfactory because the professor's conclusions could only be through a similar review of the litigation materials. 2003 U.S. Dist. LEXIS 17623, *10-11 (S.D.N.Y. Oct. 3, 2003). Goldberg fails to produce any evidence in her reports that her proposed method has gained any acceptance in assessing claims of discrimination. *See Murry v. Marina District Development Co.,* 2008 U.S. App. LEXIS 11869, *7-3 (3d Cir. June 4, 2008) (upholding exclusion of expert report where proposed expert failed to demonstrate any methodology, let alone peer-reviewed or generally accepted methodology, underlying his opinion). Interestingly, Goldberg has never testified in a trial or before a jury. (Vol. I 48:20-25).

Goldberg should be excluded as an expert because she offers nothing more than general observations as to business and HR practices and her "bottom line" that based on her "reading of the deposition transcripts, related documents, and expertise in the field of Human Resource Management, it is [her] opinion that HOVENSA's policies and practice concerning employee selection, as applied to Ms. Paul's employment, were contrary to established good HR practice and that the climate at HOVENSA is conducive to discrimination"   Revised Expert

Report p. 25; *see Naeem v. McKesson Drug Co.,* 444 F.3d 593, 607-08 (7th Cir. 2006) (appellate court affirmed the lower court's decision to exclude testimony of a HR expert because his opinions "appeared to be general observations regarding what is normal or usual business practices" and, as such, his testimony did not meet the requisite level of reliability); *Huey v. United Parcel Service,* 165 F.3d 1084, 1087 (7th Cir. 1999) (court excluded the testimony of a proposed expert in HR who had 30 years experience with employment laws and regulations because the proposed expert "had not exhibited scientific, technical or other specialized knowledge" and the proposed expert offered nothing more than his "bottom line" which "supplies nothing of value to the judicial process). Goldberg fails to establish that her opinions are based upon a sound method which is generally accepted in the community upon which to offer an expert opinion and, thus, should be excluded.

### iii. GOLDBERG'S OPINIONS ON WHETHER HOVENSA ENGAGED IN DISCRIMINATORY CONDUCT IS IMPROPER EXPERT TESTIMONY.

Goldberg's Revised Report and proposed testimony should be excluded as it continues to improperly opine on whether HOVENSA engaged in discriminatory conduct. In *Apsley, Desir* and *Prentice,* Goldberg was specifically precluded from opining on whether a defendant's actions were discriminatory. Moreover, other Federal District Courts have excluded testimony in the field of corporate HR on whether defendant engaged in discriminatory treatment as it is not an area that permits expert testimony. *See Barfield v. Orange County,* 911 F.2d 644, 651 (11th Cir. 1990) (opinion testimony about whether plaintiff was a victim of discrimination would not assist the trier of fact); *Kotla v. Regents of the Univ. of Calif.,* 115 Cal. App. 4th 283, 290-91 (Ca. App. 2004) (court improperly permitted a HR expert to testify "that certain facts in evidence were 'indications' or 'evidence' of a retaliatory motive."); *Pittman v. General Nutrition Corp.,* 2007 U.S. Dist. LEXIS 22389, *12-13 (S.D. Tex. Mar. 28, 2007) (excluding testimony by

a HR professional that company discriminated against plaintiffs); *Brink v. Union Carbide Corp.*, 41 F. Supp. 2d 402, 405 (discrimination is not an area that requires expert testimony).

Goldberg explicitly states in her report that "HOVENSA's policies and practice concerning employee selection, as applied to Ms. Paul's employment, were contrary to established good HR practice and that the climate at HOVENSA is conducive to ***discrimination***" Revised Expert Report p. 25. Goldberg repeatedly opines that HOVENSA's actions lead to "bias," "subjectivity," "unequal treatment" and "lack of equal employment opportunity" which are simply code words for discrimination. The following are examples of Goldberg's improper opinions on whether HOVENSA engaged in discriminatory conduct:

- HOVENSA's own policy was to grant vacation time based on seniority and to the extent that an organization violations its own policy, supervisors are free to make decisions using other *subjective criteria* and are more likely to be ***biased against minorities, disabled individuals and women***. (Vol. II 54:12-55:6).

- "An outcome" of HOVENSA's failure to follow its policy as to granting vacation time is to ***discriminate*** against Plaintiff based on her ***disability, gender or race***. (Vol. II 59:19-60:3).

- There should be a policy in place as to how a supervisor should identify individuals to act up and a failure to have such a policy opens the door to ***bias***. (Vol. II 60:8-:61:7; 66:8-67:4).

- HOVENSA's lack of policy for determining whom to send to training "allows *subjectivity* to enter into the process." (Vol. II 77:3-78:5).

- "[I]nformation in the interview packet only has very generic traits, and traits have not been viewed very favorably in selection cases" because "they're open to much more *subjective* [s]o there's greater room for ***bias***." (Vol. II 80:22-81:5; 96:2-7; Revised Expert Report p. 8).

- HOVENSA's denial of an interview to Plaintiff for the superintendent position resulted from HOVENSA's ***unequal application*** of its policy requiring two years of supervisory experience. (Vol. II 104:22-106:20).

- If the job description does not match the criteria that HOVENSA is using to make interview decisions then it opens the door to ***bias***. (Vol. II 107:12-15).

- There is "additional evidence of *lack of equal employment opportunity* within the terminal" which refers to "HOVENSA's overall *diversity climate*." (Vol. II 139:6-13). ***The "overall diversity climate" means it is potentially not a good place for women, disabled individuals or minorities*** to work and involves a great deal of ***subjectivity*** which could result in negative decisions made about these groups of individuals. (Vol. II 139:14-11).

- HOVENSA told Plaintiff to go on short-term disability instead of attempting to accommodate her request for a transfer which shows that its "work environment is supportive of poor HR practices" and could "result in *unequal opportunity*." (Vol. II 140:20-141:13).

- There are "numerous other incidents that are indicative of HOVENSA's *lack of regard for providing equal opportunity*, which require less explanation, but which are, nonetheless important in understanding the work environment at HOVENSA's terminal." Revised Expert Report p. 5.

Goldberg testified that the goal of her testimony is to opine that certain practices in which HOVENSA engaged are "problematic" because they open the door to ***subjectivity*** and/or the ***allows supervisors to make choices based on non-job related or performance-related metrics***. (Vol. II 19:13-20:21). Goldberg testified that subjectivity is bad because there "is an ample amount of research in scholarly literature that, absent other information, people tend to make negative decisions about disabled workers. People tend to make negative decisions about female workers, and people tend to make negative…decisions about African Americans." (Vol. II 22:12-19).

Despite her effort to play a game of "semantics," Goldberg's proposed testimony opines on whether HOVENSA engaged in discriminatory treatment which is clearly impermissible under *Apsley, Desir* and *Prentice* and many other Federal District Court opinions excluding such testimony. Goldberg admitted that her revised reports contained the <u>*same*</u> opinions as her impermissible initial report and that the revisions were simply "semantics." Simply changing "discrimination" to "bias" or "subjective criteria" or "equal opportunity" does

not change the meaning of the opinion and is a disingenuous attempt to manipulate the Court and a jury. Goldberg's opinions and proposed testimony should be excluded in their entirety.

### iv. GOLDBERG'S TESTIMONY REGARDING WHETHER HOVENSA MET OR VIOLATED HR INDUSTRY STANDARDS IS IRRELEVANT.

HOVENSA respectfully disagrees with Judge Ambrose's rulings in *Desir* and *Prentice*, permitting Goldberg to opine on "industry standards regarding human resources practices." Numerous Federal District Courts have excluded testimony by HR professionals regarding prudent HR standards in employment decisions on grounds that it is irrelevant and an area not requiring expert testimony.

#### a. TESTIMONY BY HR PROFESSIONALS REGARDING WHETHER A COMPANY'S ACTIONS ARE CONSISTENT WITH GOOD HR PRACTICE IS IRRELEVANT TO THE ISSUE OF DISCRIMINATION.

Whether HOVENSA's HR decisions pertaining to Plaintiff were "good" or "poor" are irrelevant to the issue of discrimination. In order for evidence to be admitted at trial, it must meet the threshold inquiry of relevance. Even where a court concludes that a person is qualified as an expert, her testimony cannot be admitted if it is not relevant. *See Willis v. Besam Automated Entrance Sys.,* 2005 U.S. Dist. LEXIS 26466, 13-15 (E.D. Pa. Nov. 3, 2005). In *Fields v. Libbey Glass, Inc.,* the plaintiff contended that he was denied a promotion based on his race. 2008 U.S. Dist. LEXIS 3442 (W.D. La. Jan. 16, 2008). The plaintiff's HR expert issued a report concluding that the decision maker's "selection, posting and interview process [were] not consistent with good human resource practice." *Id.* at *1. The district court excluded the expert from offering such an opinion at trial as the opinion was "wholly irrelevant to the issues at trial." *Id.* at *2.

Here, Goldberg's opinions are based on the premise that HOVENSA's employment decisions pertaining to Plaintiff run counter to scholarly and practitioner literature

16

of effective HR management. Goldberg takes issue with HOVENA's decisions and seeks to tell a jury what she believes "would be better business decisions." (Vol. II 50:18-51:3). For example, Goldberg opines that the "less senior Mr. Allahar was selected over Ms. Paul for the document supervisor position" which is "contrary to good and accepted HR practice." (Vol. II 80:22-81:5; Revised Expert Report p. 8). As to HOVENSA's selection of Mr. Allahar for the Honeywell software training, Goldberg opines it was a "poor HR decision" to have Mr. Allahar attend the training when he was precluded from working with the point person for the project." (Vol. II 68:16-20; 74:1-6). As explained in *Fields,* the question at issue is whether HOVENSA's decisions pertaining to Plaintiff were *discriminatory*, not whether HOVENSA followed scholarly literature on effective HR practices. Moreover, Goldberg is completely unqualified to decide who is best to supervise oil movement coordinators or who should go to technical training.

       Goldberg's opinions are not relevant or appropriate in this matter as she claims that she relies solely on "scholarly and practitioner literature" on effective HR management and not information about the refining industry. The issues presented in this case are unique to the refinery industry. Goldberg's opinions completely ignore the unique nature of HOVENSA's business and/or the specific issues that must be considered when addressing the refinery industry. As explained above Goldberg has no working knowledge of a refinery, is completely unfamiliar with the position Plaintiff held, and lacks knowledge of pertinent facts and information relative to these issues. According, Goldberg's opinions are irrelevant and should be excluded.

       **b. GOLDBERG'S OPINIONS SHOULD BE EXCLUDED AS THEY DO NOT CONCERN MATTERS WHICH ARE BEYOND THE UNDERSTANDING OF THE AVERAGE CITIZEN.**

       Testimony regarding whether a company followed prudent HR practices is not proper expert testimony as it concerns lay matters that a jury is fully capable of understanding

and deciding, without the need or assistance from an expert. In *Ofsharick v. GMAC Commer. Mortg. Corp.,* the plaintiff attempted to introduce an HR expert for the purpose of showing that the defendant did not follow "prudent human resources practices" when it failed to interview the plaintiff for a position. 2003 U.S. Dist. LEXIS 15646, *10 (E.D. Pa. July 17, 2003). The District Court concluded that a lay juror would be capable of evaluating the facts at issue in the case to reach a determination of whether defendant intentionally discriminated against the plaintiff without the presentation of the proposed expert testimony. *Id.* at *13-14; *see also Humphreys v. Regents of the Univ. of Cal.,* 2006 U.S. Dist. LEXIS 47822, *5-6 (N.D. Cal. July 6, 2006) (precluding HR "expert" from telling a jury that a company's failure to follow good HR practices is indicative of discrimination - testimony was unlikely to assist the jury); *Layman v. Gutierrez,* 2007 U.S. Dist. LEXIS 11606, (D. Colo. 2007) (excluding HR expert because the "normal experiences and qualifications of laymen jurors, most of whom will have been an employee or employer, are sufficient to draw a proper conclusion" regarding discrimination).

The issue in this case is whether HOVENSA discriminated against Plaintiff on the basis of her race, gender, or disability. Discrimination is not an area of inquiry that requires or even permits expert testimony. A jury in this case is capable of deciding whether HOVENSA's actions towards Plaintiff were discriminatory. Goldberg's testimony that HOVENSA's decisions run counter to the practices of effective HR management and are poor business decisions is similar to the testimony stricken in *Ofsharick*.

### v. GOLDBERG'S PROPOSED TESTIMONY IS IMPERMISSIBLE LEGAL CONCLUSIONS.

F.R.E. 702 and 704 prohibit experts from offering opinions about legal issues that will determine the outcome of the case. *In re FedEx*, 2010 U.S. Dist. LEXIS 44611, *43 (N.D. Ind. May 4, 2010). In *Rieger v. Orlor, Inc.*, the court concluded that an HR expert's opinions

18

that defendants could have accommodated plaintiff's disability without significant impact and defendants did not take reasonable care to prevent discrimination and harassment contain impressible legal conclusions. 427 F. Supp. 2d 99, 103 (D. Conn. 2006); *see also Hernandez v. City of Vancouver,* 2009 U.S. Dist. LEXIS 13020, *13-14 (W.D. Wash. Feb. 5, 2009) (plaintiff's expert's opinions regarding discriminatory and retaliatory treatment suffered by plaintiff were nothing more than legal conclusions that invaded the province of the jury as the trier of fact).

Here, Goldberg's opinions, as set forth above, are impermissible legal conclusions and should be stricken by the Court. Although Goldberg attempts to couch her legal opinions in scholarly terms, this should not disguise that her report and testimony is nothing more than legal conclusions that invade the province of the jury as the trier of fact.

### III.    GOLDBERG'S REPORT FAILS TO COMPLY WITH *DESIR* AND *PRENTICE*.

Goldberg issued a Revised Expert Report purportedly to comply with Judge Ambrose's rulings. Goldberg's Revised Expert Report, however, continues to opine on topics not requiring expert testimony, contains legal conclusions and opines on credibility. A detailed account of the specific examples of Goldberg's failure to comply with the limitations set forth by Judge Ambrose in *Desir* and *Prentice* is set forth in Exhibit F.

### IV.    GOLDBERG'S OPINIONS SHOULD BE EXCLUDED AS UNFAIRLY PREJUDICIAL.

Pursuant to F.R.E. 403, the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice. Goldberg opines on the very issue to be decided in this case – whether HOVENSA's decisions were discriminatory. The probative value of Goldberg's testimony as to whether HOVENSA's decisions were "bad" HR decisions and resulted in "bias" or "unequal employment" is clearly outweighed by the danger of unfair prejudice. *Tuli v. Brigham & Women's Hosp., Inc.,* 592 F. Supp. 2d 208, 211-212 (D.

Mass. 2009) (expert testimony as to discriminatory treatment excluded as unduly prejudicial).

## CONCLUSION

In light of the foregoing, HOVENSA respectfully requests that the Court exclude Goldberg as an expert in this case and strike her reports and testimony from the record, and grant it such other and further relief to which it may show itself justly entitled.

DATED this 24th day of April, 2012.

Respectfully submitted,

JACKSON LEWIS LLP
390 N. Orange Avenue, Suite 1285
Orlando, Florida 32801
Telephone:  (407) 246-8440
Facsimile:  (407) 246-8441


*/s/ Stephanie L. Adler*
Stephanie L. Adler
VI Bar No. 917

Alicia M. Chiu
VI Bar No.  1209

Attorneys for Defendant, HOVENSA, LLC


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24th day of April, 2012, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to:  counsel for Plaintiff, Mary Faith Carpenter, Esquire, LEE J. ROHN & ASSOCIATES, LLC, 1101 King Street, Suite 2, Christiansted, St. Croix, U.S. Virgin Islands 00820.

*/s/ Stephanie L. Adler*
STEPHANIE L. ADLER

4825-8811-3167, v.  1